IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-01490-PAB-TPO

ABADE IRIZARRY, and
KYLE SHOCKLEY,

      Plaintiffs,

v.

LEE INGERSOLL, in his individual capacity,

      Defendant.

---

## ORDER

---

This matter comes before the Court on Defendant Ingersoll's Motion for Summary Judgment [Docket No. 93], wherein Lee Ingersoll, a sergeant with the Denver Police Department, seeks summary judgment against plaintiff Abade Irizarry.[1]  Mr. Irizarry filed a response on April 29, 2024.  Docket No. 98.  Sergeant Ingersoll filed a reply on May 13, 2024.  Docket No. 103.

---

[1] Sergeant Ingersoll's motion also seeks summary judgment against plaintiff Kyle Shockley.  *See generally* Docket No. 93.  However, only Mr. Irizarry responded to Sergeant Ingersoll's motion.  Docket No. 98 at 1.  On May 6, 2024, Sergeant Ingersoll and Mr. Shockley stipulated to dismiss Mr. Shockley's claims against Sergeant Ingersoll.  Docket No. 100.  The Court deemed the stipulation ineffective because not all parties who entered an appearance signed the stipulation and the proper procedure to dismiss fewer than all claims against Sergeant Ingersoll is for plaintiffs to file an amended complaint pursuant to Fed. R. Civ. P. 15.  Docket No. 101.  Plaintiffs have yet to file an amended complaint.  Given that only Mr. Irizarry responded to Sergeant Ingersoll's motion and the parties' intention to dismiss Mr. Shockley's claims against Sergeant Ingersoll, the Court considers Sergeant Ingersoll's motion only as it pertains to Mr. Irizarry.

Sergeant Ingersoll seeks summary judgment on Mr. Irizarry's first, second, fifth, and eight claims for relief.  Docket No. 93 at 1–2.  Mr. Irizarry brings claims under 42 U.S.C. § 1983 for Fourth Amendment unlawful arrest on June 2, 2019 (claim one) and June 4, 2019 (claim two) and under the First Amendment for retaliation (claim eight) and freedom of speech (claim five), both First Amendment claims arising out of the incident on June 4, 2019.[2]  Docket No. 37 at 17–20, 23–24, 27–28.

## I.    UNDISPUTED FACTS[3]

On June 2, 2019, Mr. Irizarry and Mr. Shockley traveled to Wynkoop Plaza located in front of Union Station in Denver, Colorado.  Docket No. 93 at 2, ¶ 1.  Wynkoop Plaza is the property of and managed by the Regional Transportation District ("RTD"), a political subdivision of the State of Colorado.[4]  *Id*. at 5, ¶ 19.  Upon arrival, Mr. Irizarry used a bullhorn to discuss his opinions about a coffee shop in Denver.  *Id*. at 2, ¶ 2.  When a man approached the plaintiffs, Mr. Shockley said to him, "hey, get the

---

[2] Mr. Irizarry's fifth claim refers to the incident on June 4, 2020, while his eight claim refers to the incident on June 4, 2021.  Docket No. 37 at 23, 27 ¶¶ 146, 186.  However, both parties repeatedly refer to the events that took place on June 4, 2019 and Mr. Irizarry's complaint refers to June 4, 2019.  *See generally id*.  The Court assumes that references to June 4, 2020 and June 4, 2021 are typographical errors, and that Mr. Irizarry is referring to the events of June 4, 2019.

[3] The following facts are undisputed unless otherwise noted.

[4] The Court's practice standards require a party opposing summary judgment, with respect to each fact which the opposing party claims to be undisputed, to admit or deny that fact.  Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.iv; *see also* Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact . . . , the court may . . . consider the fact undisputed").  Mr. Irizarry denies this fact to the extent that defendant alleges RTD manages Wynkoop Plaza for "picketing, protesting, disruption of handbills, [and] other speech-related activities."  Docket No. 98 at 2–3, ¶ 19.  Mr. Irizarry's denial does not respond to Sergeant Ingersoll's assertion.  Thus, the Court deems this fact admitted.

2

fuck out of the way asshole, fuck the kids, fuck you, fuck the kids, fucking douchebag."[5]
*Id.* at 3, ¶ 3.  Mr. Shockley continuously yelled "fuck the kids" at another man, and Mr.
Irizarry asked why he should respect kids that "were all made by fucking."[6]  *Id.*, ¶ 4.  Mr.
Shockley said to another man, "you were made by fucking.  Fucking stupid but fucking.
Keep walking, tough guy," before responding to an inaudible statement with, "fuck the
kids" and "get over it asshole."  *Id.*, ¶ 5.  For approximately fourteen minutes, Mr. Irizarry
made statements about how "the homeless don't get the same privilege [to enjoy
Wynkoop Plaza] cause they're less then human" and "the urban camping ban [that]
brings critical and terrible treatment to the homeless."  Docket No. 98 at 7, ¶ 60(a).  Mr.
Irizarry also made statements about the Denver Police Department, stating that they
"beat homeless, innocent, unarmed people."  *Id.* at 8, ¶ 60(e).  Mr. Irizarry also stated
that "I work in the back of a police car . . .  Because if you have the First Amendment,
and that gets taken away, all that's left is the Second Amendment."[7]  Docket No. 93 at
3, ¶ 6.  In addition, Mr. Irizarry said, "Fuck the police and fuck RTD too" and "No justice,

---

[5] Mr. Irizarry admits that these statements were made; however, he provides the
context that the "man wearing sunglasses was responding to the statement 'no justice,
no peace, fuck the police.'"  Docket No. 98 at 1, ¶ 3.  This is not a denial, and to the
extent that Mr. Irizarry is attempting to assert an additional disputed fact, such fact must
be included in a separate section, entitled "Statement of Additional Disputed Facts."
*See* Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.v.
Thus, the Court deems this fact to be admitted.

[6] Mr. Irizarry admits that these statements were made; however, he only admits
to the extent that "saying a phrase three times counts as continuously yelled."  Docket
No. 98 at 1, ¶ 4 (internal quotations and brackets omitted).  This does not constitute a
denial.  Accordingly, the Court deems this fact to be admitted.

[7] Mr. Irizarry admits that he and Mr. Shockley made these statements; however,
he states that "Defendant fails to include Mr. Irizarry's full statement."  Docket No. 98 at
1–2, ¶ 6.  This does not constitute a denial.  Accordingly, the Court deems this fact to be
admitted.

no peace fuck the Denver police and RTD and Allied Security Universal."  Docket
No. 98 at 7–8, ¶ 60(g)-(h).

Security Officer Scott Weber, an employee of Allied Universal,[8] asked plaintiffs to
leave the Wynkoop Plaza property and stated "[c]ould we watch the language – there's
children around." Docket No. 93 at 2, 3, ¶¶ 1, 7; Docket No. 98 at 9, ¶ 61.  In response,
Mr. Shockley replied, "we are not on the property, but have a nice day."  Docket No. 93
at 3, ¶ 7.  Plaintiffs were approached by Jonathan Bedor, a chef at the Crawford Hotel,
who said "hey, we have kids here dude," to which Mr. Shockley repeatedly said, "fuck
the kids, fuck you," and Mr. Irizarry said, "it's ok" and "we all know these kids were made
by fucking."  *Id*. at 3, 9 ¶¶ 8–9, 43.  Mr. Irizarry stated, "My very purpose is to
antagonize, to protest, to cause irritation."  *Id*.  Officer Patrick Hayden later interviewed
Mr. Bedor.  *Id.* at 9, ¶ 42.

On June 2, 2019, Sergeant Ingersoll was off-duty, but he was working for RTD
pursuant to an agreement with the Denver Police Department.  *Id*. at 4, ¶ 16.  Around
12:40 p.m., RTD dispatch reported to Sergeant Ingersoll that trespassers were causing
a disturbance in Wynkoop Plaza.  *Id*. at 5, ¶ 17.  Security Officers Weber and Keola
Slater met Sergeant Ingersoll when he arrived at 12:45 p.m.  *Id.*, ¶ 18; Docket No. 98 at
10, ¶ 62.  Sergeant Ingersoll understood that Security Officer Weber had the authority to

---

[8] Neither party in their statements of material facts states Allied Universal's
relationship with RTD.  However, in the final pretrial order, Mr. Irizarry refers to Allied
Universal Security Officer Scott Weber as "the head security guard" for RTD.  Docket
No. 108 at 2.  Sergeant Ingersoll describes the individuals who complained of plaintiffs'
conduct on June 2, 2019 as being "authorized representatives of RTD, Crawford Hotel,
and civilian witnesses."  *Id.* at 3.  Furthermore, in the video that Sergeant Ingersoll cites
to in support of his assertion of facts, Mr. Weber confirms that he is a "representative" of
RTD.  Docket No. 93-1 at 0:34–0:42.

revoke individuals' license to be on the Wynkoop Plaza property and to direct them to leave. Docket No. 93 at 5, ¶ 20. Security Officer Weber told Sergeant Ingersoll that he had told plaintiffs to vacate Wynkoop Plaza numerous times.[9] *Id*., ¶ 22. Sergeant Ingersoll arrested plaintiffs at 12:48 p.m. for trespass and disturbing the peace pursuant to Denver Rev. Mun. Code §§ 38-115(a), 38-89(a). Docket No. 93 at 7, ¶ 33; Docket No. 98 at 10, ¶ 65.

On June 4, 2019, at approximately 4:00 p.m., plaintiffs returned to Union Station. Docket No. 93 at 9, ¶ 46. At Union Station, plaintiffs "continued to say things such as 'fuck the police.'"[10] Docket No. 98 at 12, ¶ 79. The entirety of Mr. Irizarry's "June 4 protest" took place on public sidewalks in Wynkoop Plaza.[11] *Id*., ¶ 81. At one point, Mr. Irizarry approached Mr. Bedor outside Union Station and called him a "rat" and a "fat piece of shit."[12] Docket No. 93 at 9, ¶ 48. Sergeant Ingersoll interviewed Mr. Bedor,

---

[9] Mr. Irizarry admits that Security Officer Weber made these statements; however, he adds that Security Officer Weber said "in that same statement that Mr. Irizarry refused because it was public property." Docket No. 98 at 3, ¶ 22. This is not a denial. Accordingly, the Court deems this fact to be admitted.

[10] Sergeant Ingersoll denies Mr. Irizarry's assertion of fact, stating that he "determined that he had probable cause to arrest Plaintiff for Intimidating a Witness on June 4, 2019," "Plaintiff's assertion that the determination to arrest him for Intimidating a Witness was made post-arrest is irrelevant," and "an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking." Docket No. 103 at 4–5, ¶¶ 56–57. This is not a denial, but rather legal argument. Accordingly, the Court deems this fact admitted.

[11] Sergeant Ingersoll denies Mr. Irizarry's assertion of fact for the same reasons stated *supra* note 10. Docket No. 103 at 4–5, ¶¶ 56–57. This is not a denial, but rather legal argument. Accordingly, the Court deems this fact admitted.

[12] Mr. Irizarry admits that he said the words "rat" and "piece of shit," but claims that "Defendant's characterization is not a fact and [is] instead his own interpretation." Docket No. 98 at 6, ¶ 48. This is not a denial. Accordingly, the Court deems this fact admitted.

who stated that he felt "harass[ed]" and "intentionally target[ed]" by Mr. Irizarry.[13]  *Id.* at

10, ¶ 53; Docket No. 93-4 at 2:48–2:52; 3:20–3:23.  Sergeant Ingersoll then arrested

Mr. Irizarry for disturbing the peace.[14]  Docket No. 98 at 12, ¶ 82.  After Mr. Irizarry's

arrest, Sergeant Ingersoll "beg[an] to believe that he could charge Mr. Irizarry for

Intimidating a Witness" and added an additional citation for the charge of intimidation of

a witness.  *Id.*, ¶ 84.  The District Attorney later dropped all charges related to activities

on June 4, 2019.  *Id.*, ¶ 86.

## II.    LEGAL STANDARD

### A.    Summary Judgment

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when

the "movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A disputed fact is "material" if,

under the relevant substantive law, it is essential to the proper disposition of the claim.

---

[13] Sergeant Ingersoll asserts that Mr. Bedor "indicated" to Sergeant Ingersoll that Mr. Irizarry "targeted [Mr. Bedor] with harassment on June 4, 2019, because [Mr. Bedor] was a witness to [Mr. Irizarry's] conduct on June 2, 2019."  Docket No. 93 at 10, ¶ 53. Mr. Irizarry denies this fact, arguing that "Mr. Bedor never suggested any reason Mr. Irizarry would have called him a 'fat piece of shit.'"  Docket No. 98 at 6, ¶ 53.  The video cited by Sergeant Ingersoll only shows Mr. Bedor saying that he felt Mr. Irizarry was "harassing" him and that Mr. Bedor felt "intentionally target[ed]."  Docket No. 93-4 at 2:48–2:52; 3:20–3:23.  Accordingly, the Court deems Mr. Bedor's statement that he felt Mr. Irizarry was "harassing him" as undisputed and that Mr. Bedor felt "intentionally targeted" as undisputed, but will not consider it as undisputed that Mr. Bedor said he was being targeted "because he was a witness" to Mr. Irizarry's conduct on June 2, 2019.  Docket No. 93 at 10, ¶ 53.

[14] Sergeant Ingersoll denies Mr. Irizarry's assertion of fact for the same reasons stated *supra* note 10.  Docket No. 103 at 4–5, ¶¶ 56–57.  This is not a denial, but rather legal argument.  Accordingly, the Court deems this fact admitted.

*Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To defeat a motion for summary judgment, the nonmovant's evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise," and "[u]nsubstantiated allegations carry no probative weight." *SEC v. GenAudio Inc.*, 32 F.4th 902, 921 (10th Cir. 2022) (citations and alterations omitted).  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001).

B. **Qualified Immunity**

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court should resolve questions of qualified immunity at the earliest possible stage of litigation. *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987).

To overcome a qualified immunity defense at the summary judgment stage, a plaintiff must demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Surat v. Klamser*, 52 F.4th 1261, 1270-71 (10th Cir. 2022). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson*, 555 U.S. at 236. Generally, a constitutional right is clearly established if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Surat*, 52 F.4th at 1276. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Torres v.*

*Madrid*, 60 F.4th 596, 603 (10th Cir. 2023); *see also Irizarry v. Yehia*, 38 F.4th 1282,

1293 (10th Cir. 2022).  The relevant precedent is "considered on point if it involves

*materially similar conduct* or applies with *obvious clarit*y to the conduct at issue."

*Irizarry*, 38 F.4th at 1294 (emphasis in original); *see also Shepherd v. Robbins*, 55 F.4th

810, 815 (10th Cir. 2022).  "To be clear, we do not require plaintiffs to engage in a

scavenger hunt for a prior case with identical facts.  We ask whether the existing law

provides fair warning to a defendant."  *Shepherd*, 55 F.4th at 815 (citations omitted).

## III.  ANALYSIS

Because Sergeant Ingersoll invokes qualified immunity, Mr. Irizarry must

demonstrate as to each claim (1) that Sergeant Ingersoll violated a constitutional right,

and (2) that the right was "clearly established" at the time of the challenged conduct to

overcome the qualified immunity defense.  *Surat*, 52 F.4th at 1270–71.

### A.  Claim One – Fourth Amendment Unlawful Arrest on June 2, 2019

Mr. Irizarry claims that Sergeant Ingersoll violated his Fourth Amendment rights

by arresting Mr. Irizarry without probable cause on June 2, 2019.  Docket No. 37 at 17–

19, ¶¶ 98–108.  Sergeant Ingersoll moves for summary judgment on this claim, arguing

that he is entitled to qualified immunity.  Docket No. 93 at 11–14.

#### 1.  Violation of Constitutional Rights

The Court will first determine whether Sergeant Ingersoll had probable cause to

arrest Mr. Irizarry for trespass under § 38-115(a) of the Denver Municipal Code, which

states, in relevant part, that it is,

> unlawful for any person knowingly to enter or remain upon the premises of
> another when consent to enter or remain is absent, denied, or withdrawn by the
> owner, occupant, or person having lawful control thereof.

Den. Rev. Mun. Code § 38-115(a).

"In a qualified immunity context, the probable cause evaluation is a question of law appropriate for resolution by the Court." *Shimomura v. Carlson*, 17 F. Supp. 3d 1120, 1132 (D. Colo. 2014) (citing *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)). When determining whether an officer has probable cause for an arrest, the court must "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *District of Columbia v. Wesby*, 583 U.S. 48, 56–57 (2018) (internal quotation marks and citation omitted). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (quoting *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995)). It is not a "high bar" for a court to find that an officer had probable cause. *Wesby*, 583 U.S. at 57 (citation omitted). Rather, the existence of probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* (citation omitted).

Sergeant Ingersoll argues that he had probable cause to arrest Mr. Irizarry for trespass because, prior to Sergeant Ingersoll's arrest of Mr. Irizarry, security officers "advised [Sergeant] Ingersoll of Plaintiffs' conduct and the refusal of Plaintiffs to leave the Plaza when directed to do so." Docket No. 93 at 13–14. Mr. Irizarry responds that Sergeant Ingersoll did not have probable cause to arrest Mr. Irizarry because the arrest was based on Mr. Irizarry's "words." Docket No. 98 at 14.

The Court finds that Sergeant Ingersoll had probable cause to arrest Mr. Irizarry for trespassing. Sergeant Ingersoll understood that Security Officer Weber had the authority to revoke individuals' license to be on the Wynkoop Plaza property and to direct them to leave. Docket No. 93 at 5, ¶ 20. Security Officer Weber informed Sergeant Ingersoll that he told plaintiffs numerous times to leave Wynkoop Plaza, which they refused to do. *Id*., ¶ 22. Sergeant Ingersoll then arrested Mr. Irizarry. *Id*. at 7, ¶ 33.

In *Kee v. Ahlm*, 219 F. App'x 727, 731 (10th Cir. 2007) (unpublished), the Tenth Circuit held that a police officer had probable cause to arrest a bar patron for trespass after bouncers from the bar flagged down the officer from across the street and directed the officer to arrest the patron. "[A] reasonable police officer would have had sufficient grounds to believe that [the bar patron] had been told to leave by the owner or authorized bar staff and was nevertheless remaining on the premises, knowing his right to do so had been revoked." *Id.* Similarly, Security Officer Weber informed Sergeant Ingersoll that he had told plaintiffs to leave RTD property and that plaintiffs had refused to leave. Docket No. 93 at 5, ¶ 22; *see also Kerr v. City of Boulder, Colo.*, No. 19-cv-01724-KLM, 2021 WL 2514567, at *20 (D. Colo. June 18, 2021) (holding that information from dispatch and other officers stating the alleged trespassers were near the property in question gave officer probable to arrest the plaintiffs for trespassing, even though the plaintiffs ultimately were determined not to have trespassed). Thus,

Mr. Irizarry's constitutional rights were not violated when Sergeant Ingersoll arrested him for trespassing on June 2, 2019.[15]

Because the Court determines that Sergeant Ingersoll had probable cause to arrest Mr. Irizarry for trespassing, there is no need for the Court to consider whether Sergeant Ingersoll had probable cause to arrest Mr. Irizarry for disturbance of the peace. "All that matters is whether [the arresting officer] possessed knowledge of evidence that would provide probable cause to arrest [the plaintiff] on *some* ground." *Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir. 2006) (citing *Devenpeck v. Alford,* 543 U.S. 146, 153, (2004)). "[I]t is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Spalsbury v. Sisson*, 250 F. App'x 238, 245 (10th Cir. 2007) (unpublished) (citation omitted). Accordingly, Mr. Irizarry cannot escape summary judgment by arguing only that the arrest was unconstitutional because there was no probable cause to arrest for disturbing the peace. *Apodaca,* 443 F.3d at 1289; *see also Montgomery v. Valandra,* No. 18-cv-02897-PAB-MEH, 2019 WL 9240296, at *9 (D. Colo. Nov. 22, 2019), *report and recommendation adopted*, 2020 WL 1672761 (D. Colo. Apr. 6, 2020) (finding that the court need not make a "determination whether independent probable cause did exist to support the arrest for trespass"

---

[15] Mr. Irizarry argues that he was arrested for engaging in First Amendment protected speech, which cannot be the basis for probable cause. Docket No. 98 at 15. However, because the Court finds that Sergeant Ingersoll had probable cause to arrest plaintiffs for trespassing, unrelated to plaintiffs' speech, it need not consider that argument.

because the plaintiff did not plausibly allege that the arresting officer lacked probable

cause to arrest the plaintiff for another crime).

Given that Sergeant Ingersoll had probable cause to arrest Mr. Irizarry on June 2,

2019, Sergeant Ingersoll is entitled to qualified immunity on Mr. Irizarry's unlawful arrest

claim.  The Court grants Sergeant Ingersoll's motion for summary judgment on claim

one.[16]

### B. Claim Two - Fourth Amendment Unlawful Arrest on June 4, 2019

Mr. Irizarry alleges that Sergeant Ingersoll violated his Fourth Amendment rights

by arresting Mr. Irizarry without probable cause on June 4, 2019.  Docket No. 37 at 19–

20, ¶¶ 109–119.  Sergeant Ingersoll moves for summary judgment on this claim,

arguing that he is entitled to qualified immunity.  Docket No. 93 at 15–16.

#### 1. Violation of Constitutional Rights

The first issue concerning the second claim is whether the undisputed facts show

that Sergeant Ingersoll had probable cause to arrest Mr. Irizarry for intimidation of a

witness[17] on June 4, 2024.  Section 18-8-704 of the Colorado Revised Statute states, in

relevant part:

> (1) A person commits intimidating a witness or victim if:

---

[16] Because the Court finds that Mr. Irizarry's constitutional rights were not
violated, it need not address whether clearly established law put Sergeant Ingersoll on
notice that he was violating Mr. Irizarry's constitutional rights, or in other words, whether
he had arguable probable cause to arrest Mr. Irizarry.  *See Pearson*, 555 U.S. at 236
(holding that courts may exercise discretion "in deciding which of the two prongs of the
qualified immunity analysis should be addressed first in light of the circumstances in the
particular case at hand").

[17] Sergeant Ingersoll does not argue that he had probable cause to arrest Mr.
Irizarry for disturbing the peace on June 4, 2019.  *See generally* Docket No. 93.
Accordingly, the Court finds it undisputed that Sergeant Ingersoll did not have probable
cause to arrest Mr. Irizarry for disturbing the peace and will only consider whether
Sergeant Ingersoll had probable cause to arrest Mr. Irizarry for witness intimidation.

> (a) By use of a threat, act of harassment as defined in section 18-9-111, or act of harm or injury to any person or property directed to or committed upon:
>
>> (I) A witness in any criminal or civil proceeding;
>> . . .
>
> (b) He or she intentionally attempts to or does:
>
>> (I) Influence the witness or victim to testify falsely or unlawfully withhold any testimony; or
>>
>> (II) Induce the witness or victim to avoid legal process summoning him or her to testify; or
>>
>> (III) Induce the witness or victim to absent himself or herself from an official proceeding; or
>>
>> (IV) Inflict such harm or injury prior to such testimony or expected testimony; or
>>
>> (V) Influence the witness, victim, or any person with knowledge of relevant information to withhold information from, or provide false information to, law enforcement, a defense attorney, or a defense investigator.

Colo. Rev. Stat. 18-8-704(1).

Sergeant Ingersoll argues that he had probable cause to arrest Mr. Irizarry for intimidating a witness. Docket No. 93 at 16. Sergeant Ingersoll states that "Mr. Irizarry returned to the location of his prior arrest, and called a line cook at a restaurant in Union Station (later identified as Mr. Bedor) a 'fat piece of shit' and a 'rat.'" *Id*. at 15. Mr. Irizarry responds that "calling someone a 'rat' or a 'fat piece of shit'" is not probable cause, or even arguable probable, cause to arrest for intimidation of a witness. Docket No. 98 at 15–16. Furthermore, Mr. Irizarry argues that his words do not constitute "patently offensive description[s] of ultimate sexual acts" and therefore do not constitute harassment. *Id*. at 16 (quoting Colo. Rev. Stat. § 18-9-111(1.5)).

14

The Court finds that Sergeant Ingersoll did not have probable cause to arrest Mr. Irizarry for witness intimidation.  While it is undisputed that Mr. Irizarry called Mr. Bedor a "rat" and "fat piece of shit", there are no undisputed facts that Sergeant Ingersoll was aware of this language prior to arresting Mr. Irizarry.  Docket No. 93 at 9, ¶ 48.  Rather, all that is undisputed is that Mr. Bedor told Sergeant Ingersoll that Mr. Bedor felt "harass[ed]" and "intentionally target[ed]" by Mr. Irizarry.  Docket No. 93-4 at 2:48–2:52; 3:20–3:23.  An individual intimidates a witness in violation of Colo. Rev. Stat. § 18-8-704(1)(a) when, through an "act of harassment," that individual "intentionally attempts to or does" achieve a purpose enumerated in Colo. Rev. Stat. § 18-8-704(1)(b).  Colo. Rev. Stat. § 18-8-704(1)(a), (b).  Pursuant to Colo. Rev. Stat. § 18-9-111, "harassment" occurs where an individual "with intent to harass, annoy, or alarm another person" "directs obscene language or makes an obscene gesture to or at another person." Colo. Rev. Stat. § 18-9-111(1)(b).  There are no undisputed facts that show Sergeant Ingersoll was aware of any obscene language employed by Mr. Irizarry.[18]  Mr. Bedor's statements to Sergeant Ingersoll that he felt "harassed" and "intentionally targeted" by Mr. Irizarry do not demonstrate that Sergeant Ingersoll had "reasonably trustworthy information [as] sufficient to lead a prudent person to believe" that Mr. Irizarry violated Colo. Rev. Stat. § 18-8-704 by intimidating a witness.  *York*, 523 F.3d at 1210. Accordingly, Mr. Irizarry has demonstrated that his arrest on June 4, 2019 violated his Fourth Amendment rights because he was arrested without probable cause.

---

[18] Even if Sergeant Ingersoll was aware that Mr. Irizarry called Mr. Bedor a "rat" and "fat piece of shit," this is not "obscene" language because it is not a "patently offensive description of ultimate sexual acts of solicitation."  Colo. Rev. Stat. § 18-9-111(1.5)

### 2. Clearly Established Law

Sergeant Ingersoll argues that, even if he did not have probable cause to arrest Mr. Irizarry on June 4, 2019, Mr. Irizarry "cannot show that Sergeant Ingersoll's conduct was in contravention of clearly established law." Docket No. 93 at 15. "[W]hen a warrantless arrest or seizure is the subject of a § 1983 action, the defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007) (en banc). Thus, in the Tenth Circuit, "[a]s a practical matter, in the context of a qualified immunity defense on an unlawful arrest claim, [courts] ascertain whether a defendant violated clearly established law by asking whether there was arguable probable cause for the challenged conduct." *Corona v. Aguilar*, 959 F.3d. 1278, 1285 (10th Cir. 2020) (internal quotation marks and alterations omitted). "Arguable probable cause" is another way of saying that the officers' conclusions about whether probable cause existed rested on a reasonable but mistaken belief. *Cortez*, 478 F.3d at 1120–21. Therefore, Sergeant Ingersoll is entitled to qualified immunity if he "could have reasonably believed that probable cause existed in light of well-established law." *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 879 (10th Cir. 2014) (citation omitted).

In *Mglej v. Gardner*, 974 F.3d 1151, 1164 (10th Cir. 2020), the court held that "the plain language" of the statute meant that the officer "could not have reasonably believed he had probable cause" to arrest the plaintiff. Therefore, the court held that the defendant did not have arguable probable cause. *Id*. Similarly, Colo. Rev. Stat. § 18-8-704 is clear that Mr. Irizarry must have intended to intimidate, induce, or otherwise

influence Mr. Bedor's participation in upcoming proceedings related to the June 2, 2019

incident, through an act of harassment, for Mr. Irizarry's actions to constitute intimidation

of a witness.  Sergeant Ingersoll did not have arguable probable cause to arrest Mr.

Irizarry for intimidation of a witness because a "reasonable, similarly situated police

officer" would have been on notice "that no probable cause existed for the warrantless

arrests." *Quinn v. Young*, 780 F.3d 998, 1007 (10th Cir. 2015) (emphasis omitted).  At

the point of Mr. Irizarry's arrest, Sergeant Ingersoll only knew that Mr. Irizarry's conduct

made Mr. Bedor feel "intentionally target[ed]" and "harass[ed]."  Docket No. 93-4 at

2:48–2:52; 3:20–3:23.  Notably, there are no undisputed facts that show that Sergeant

Ingersoll had knowledge that Mr. Irizarry "harassed" Mr. Bedor pursuant to Colo. Rev.

Stat. § 18-9-111(1)(b) (i.e. that Mr. Irizarry directed obscene language at Mr. Bedor).

Accordingly, Mr. Irizarry has overcome Sergeant Ingersoll's qualified immunity

defense on his claim of unlawful arrest on June 4, 2019.  The Court will deny summary

judgment for Sergeant Ingersoll on claim two.

### C. Mr. Irizarry's First Amendment Claims Arising Out of June 4, 2019 Arrest

The Court will deny summary judgment to Sergeant Ingersoll as to Mr. Irizarry's

claims five and eight because Sergeant Ingersoll's motion does not address the

allegations in those claims.

In his fifth claim, Mr. Irizarry asserts a First Amendment free speech violation.

Docket No. 37 at 23–24, ¶¶ 145–58.  Claim five alleges that Mr. Irizarry's

"communications of messages during the entirety of his protest" on June 4, 2019 "were

expressive activities protected by the First Amendment."  *Id.* at 23, ¶ 146.  Specifically,

Mr. Irizarry alleges that his speech was a "matter of public concern while standing in a

17

public place." *Id.*, ¶ 152. Mr. Irizarry alleges that Denver has a custom or practice of

arresting "activists for protest conduct . . . directed at police misconduct." *Id.*, ¶ 155.

Mr. Irizarry asserts that the action of Sergeant Ingersoll was "pursuant" to such custom

or practice, which encourages "the restraint of speech" of individuals "expressing

viewpoints critical of Defendant City of Denver." *Id*. at 24, ¶ 156.

      In moving for summary judgment on claim five, Sergeant Ingersoll does not

address whether Mr. Irizarry's protest speech was protected by the First Amendment.

*See* Docket No. 93 at 16–18. Instead, Sergeant Ingersoll argues that Mr. Irizarry's

words to Mr. Bedor, which he characterizes as intimidation, are not protected by the

First Amendment. *Id*. In claim five, Mr. Irizarry does not refer to speech directed to Mr.

Bedor. Instead, claim five is reasonably read to be limited to "protest conduct" while

standing in a public place. Docket No. 37 at 23, ¶ 152. It is undisputed that on June 4,

2019 Mr. Irizarry "continued to say things such as 'fuck the police'" while on public

sidewalks of Wynkoop Plaza. Docket No. 98 at 12, ¶¶ 79, 81. Sergeant Ingersoll's

motion regarding claim five does not discuss Mr. Irizarry's First Amendment right to

engage in "protest conduct," which the amended complaint describes as "calling out

police killings and the ways in which the Denver Police have taken action to quiet those

who speak out against their misconduct." Docket No. 37 at 10, ¶ 66.

      Nor does Sergeant Ingersoll address whether he had probable cause to arrest

Mr. Irizarry in connection with Mr. Irizarry's protest conduct.[19] *See* Docket No. 93 at 18–

---

[19] Sergeant Ingersoll does not address the fact that his probable cause statement
regarding Mr. Irizarry's arrest for disturbing the peace did not include any reference to
Mr. Irizarry's protest speech. Sergeant Ingersoll's probable cause statement indicates:

      The probable cause of the arrest of the above-named individual is as follows:

19.  Instead, Sergeant Ingersoll argues that he had probable cause to arrest Mr. Irizarry for witness intimidation on June 4, 2019.  *Id.* at 19.  Sergeant Ingersoll's argument that he had probable cause to arrest Mr. Irizarry for witness intimidation is irrelevant to Mr. Irizarry's fifth claim that alleges Sergeant Ingersoll's arrest of Mr. Irizarry for disturbing the peace was a content-based restriction of Mr. Irizarry's protest speech.

In his eighth claim, Mr. Irizarry asserts a claim for First Amendment retaliation. Docket No. 37 at 27–28, ¶¶ 185–196.  The complaint alleges that Sergeant Ingersoll retaliated against Mr. Irizarry by "arrest[ing] Plaintiff and charging Plaintiff with disturbing the peace without probable cause to believe that Plaintiff had engaged in illegal conduct, and charging, investigating, and prosecut[ing] Plaintiff for his constitutionally-protected expressive activity." *Id.* at 27, ¶ 188.  He alleges that his "First Amendment protected activity" of "conducting a protest of police brutality and Denver's camping ban" on June 4, 2019 subjected him to unlawful retaliation.  *Id.*, ¶ 186.

---

[On 06/04/19 at approximately 1615 hours, while working as 270A (full uniform in an off-duty capacity for RTD), I responded to the Crawford Hotel (1701 Wynkoop St.) on a reported disturbance.  At the Crawford Hotel I contacted BEDOR, Jonathan 11/17/82, who is a line cook at a restaurant in the hotel. Bedor informed me that a party, positively identified as IRIZARRY, Abade 07/21/69, had entered the hotel and began screaming vulgarities at him and calling him a "rat."  This was in reference to an incident that occurred at the same location on 06/02/19 where Irizarry was arrested for disturbing the peace and trespassing.  The fact that Irizarry entered the location and began yelling the vulgarities at Bedor made him feel as if he is being harassed and disturbed not only his general, but that of numerous patrons in the hotel and restaurant.  Bedor expressed his wish to press charges.  Irizarry was taken into custody without incident and positively identified by Bedor as the individual who committed the offense.

Docket No. 98-6 at 6.

Again, Sergeant Ingersoll's summary judgment motion focuses on speech that is not the subject of claim eight, namely, Mr. Irizarry's statements to Mr. Bedor, and ignores the scope of claim eight, which is limited to "conducting a protest of police brutality and Denver's camping ban." *Id*.; *see also* Docket No. 103 at 9 ("Plaintiff's retaliation claim is premised on the argument that directing vulgar and obscene language to a witness in a criminal proceeding is protected by the First Amendment."). Given that Sergeant Ingersoll fails to address whether he had probable cause to arrest Mr. Irizarry for disturbing the peace, he also fails to respond to Mr. Irizarry's allegation that Sergeant Ingersoll retaliated against Mr. Irizarry by "arrest[ing] Plaintiff and charging Plaintiff with disturbing the peace without probable cause to believe that Plaintiff had engaged in illegal conduct." Docket No. 37 at 27, ¶ 188. Sergeant Ingersoll fails to show that he is entitled to summary judgment on claim eight.

As the party moving for summary judgment, Sergeant Ingersoll has the burden to identify "a lack of evidence" for Mr. Irizarry on "an essential element" of Mr. Irizarry's claims. *See Bausman*, 252 F.3d at 1115. Sergeant Ingersoll cannot meet this burden where, as here, he fails to respond to the elements that Mr. Irizarry alleges in claims five and eight of the amended complaint. Accordingly, the Court will deny summary judgment for Sergeant Ingersoll on claims five and eight.[20]

---

[20] The Court notes that the parties are like two ships passing in the night in regard to claims five and eight. As noted above, Sergeant Ingersoll misconstrues those claims to encompass Mr. Irizarry's statements to Mr. Bedor. However, in response to the motion, Mr. Irizarry, rather than noting the scope of his own claims, combines a discussion of Mr. Irizarry's "protest conduct" with a discussion of the words to Mr. Bedor without explaining why Mr. Irizarry's words to Mr. Bedor are implicated by those claims. Moreover, even though the probable cause statement for the June 4, 2019 arrest for disturbing the peace suggests that Sergeant Ingersoll did not arrest Mr. Irizarry for his

IV.    **CONCLUSION**

Therefore, it is

**ORDERED** that Defendant Ingersoll's Motion for Summary Judgment [Docket

No. 93] **is GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that claim one is **dismissed without prejudice.**

DATED February 4, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

"protest conduct," and that claims five and eight fail for that reason, Sergeant Ingersoll's
motion for summary judgment never makes that argument.