IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 21-cv-01490-PAB-TPO

ABADE IRIZARRY,

    Plaintiff,

v.

LEE INGERSOLL, in his individual capacity,

    Defendant.

---

**ORDER**

---

This matter comes before the Court on Plaintiff's Motion for Attorney's Fees and Costs [Docket No. 138]. Defendant filed a response. Docket No. 139. Plaintiff filed a reply. Docket No. 140. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.    BACKGROUND

On March 14, 2022, plaintiff[1] filed his amended complaint, bringing claims under 42 U.S.C. § 1983 for Fourth Amendment unlawful arrest arising out of his arrest on June 2, 2019 (Claim One) and his arrest on June 4, 2019 (Claim Two). Docket No. 37 at 17-20. Plaintiff asserted a First Amendment retaliation claim (Claim Eight) and freedom of speech claim (Claim Five), with both of these claims arising out of plaintiff's arrest on June 4, 2019. *Id.* at 23-24, 27-28. On February 4, 2025, the Court granted in part and denied in part defendant's motion for summary judgment, dismissing Claim One.

---

[1] Plaintiff Kyle Shockley's claims were dismissed upon agreement of the parties. *See* Docket No. 116 at 1, ¶ 1.

Docket No. 116 at 21.  Trial was scheduled to begin on January 5, 2026.  Docket No. 114.

On December 16, 2025, plaintiff filed a notice of acceptance of an Offer of Judgment pursuant to Fed. R. Civ. P. 68.  Docket No. 135.  On December 17, 2025, pursuant to Rule 68(a), the Clerk of Court entered judgment in favor of plaintiff and against defendant "in full resolution of any and all claims by plaintiff against defendant, exclusive of costs and attorney's fees" in accordance with defendant's Offer of Judgment.  Docket Nos. 135-1, 137.

## II.    ANALYSIS

### A.  Whether Plaintiff Can Seek Attorney's Fees and Costs

Section 1988(b) of Title 42 permits the "prevailing party, other than the United States," in a civil rights action to receive an award of reasonable attorney's fees.  42 U.S.C. § 1988(b).  The Supreme Court has held that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadueau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)).

Plaintiff argues that, through his acceptance of defendant's Rule 68 offer, he became the prevailing party for purposes of § 1988(b).  Docket No. 138 at 2-3. Defendant argues that the Offer of Judgment precludes plaintiff's ability to receive an attorney's fee and costs award.  *See* Docket No. 139 at 2-4.  Defendant relies on the fact that the Offer of Judgment was "exclusive of costs and attorney's fees."  *See id.*  In

2

defendant's view, this phrase should be read to mean that plaintiff cannot seek

attorney's fees and costs.  *See id.*

The Court disagrees with defendant's reading of the Rule 68 Offer of Judgment.

Defendant's Offer of Judgment states in full:

> Defendant Lee Ingersoll, by and through the undersigned, pursuant to Fed. R.
> Civ. P. 68, hereby offers to allow judgment to be entered against him in this
> action in the amount of $5,000, **exclusive of costs and attorney fees**, in full
> resolution of any and all claims by Plaintiff.  This offer of judgment is made for the
> purposes specified in Rule 68, and is not to be construed as an admission of
> liability on the part of Defendant, nor is it to be construed as an admission that
> Plaintiff has suffered any damages.  If Plaintiff does not accept this offer by
> service of written notice within fourteen (14) days after service of this offer upon
> him, this offer will be deemed rejected.

Docket No. 135-1 (emphasis added).  The Offer of Judgment does not say that

defendant offers to allow judgment against him in a "total" amount of $5,000 or "in the

amount of $5,000, *inclusive* of costs and attorney's fees."  Rather, by saying "exclusive

of," which has the common meaning of having the power "to bar from participation,

consideration, or inclusion," *see "Exclusive,"* https://www.merriam-webster.com/

dictionary/exclusive (last visited Aug. 10, 2026), the language is reasonably read to

exclude the issue of costs and fees from the "full resolution" of plaintiff's claims and to

determine these issues separately.  Courts have interpreted the phrase "exclusive of

attorney's fees" to mean that plaintiff is permitted to seek attorney's fees and costs

pursuant to the applicable statutory authority.  *See, e.g., Martinez v. Paramount Country

Club, LLC*, 2019 WL 2171109, at *1 n.1 (S.D.N.Y. May 20, 2019) (considering plaintiff's

motion for attorney's fees after plaintiff accepted an Offer of Judgment that was

"exclusive of attorneys' fees"); *Mohamoud v. Cnty. of Clay*, 2008 WL 11463637, at *4

(D. Minn. Apr. 2, 2008) ("[Defendant's] Rule 68 offer of $10,000 states that it is

3

'exclusive of accrued costs, disbursements and attorney's fees to date.' [Plaintiff] brought this action pursuant to Title VII and the Minnesota Human Rights Act, and thus he may seek an award of attorney's fees from the Court.") (internal citation omitted). Accordingly, plaintiff is permitted to move for an attorney's fee and costs award. It was "defendant's responsibility to make clear any intent that its Rule 68 offer was inclusive of costs and fees." *See Henderson v. Horace Mann Ins. Co.*, 2006 WL 1878897, at *3 (N.D. Okla. July 6, 2006).

Defendant next argues that, even if plaintiff is entitled to attorney's fees, that "[a]n award of fees under § 1988 is discretionary, and in this case, the Court may exercise its discretion and decline to award fees entirely" given that plaintiff's "success is technical, rather than judgment on the merits." Docket No. 139 at 4. Defendant contends that the "$5,000 judgment reflects nuisance value, and is not reflective of any success obtained by Plaintiff on the merits." *Id.* at 5.

"In some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all." *Farrar v. Hobby*, 506 U.S. 103, 115 (1992). "In analyzing whether a plaintiff's victory is purely technical or *de mininis*," courts look to "relevant indicia of success," also known as the *Farrar* factors, which are "(1) the difference between the judgment recovered and the recovery sought; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) the public purpose of the litigation." *See Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997) (internal quotation omitted) (citing *Farrar*, 506 U.S. at 121–22). Since *Farrar* was decided, "the Tenth Circuit has repeatedly awarded attorney's fees to plaintiffs who recover nominal damages." *Fallen v. GREP Sw., LLC*, 247 F. Supp. 3d 1165, 1192 (D.N.M. 2017)

4

(collecting cases).  The Tenth Circuit has interpreted *Farrar* as follows: "*Farrar* essentially holds that failure to recover more than nominal damages in a § 1983 action is a Pyrrhic or technical victory precluding an award of attorney's fees under § 1988 *only* when the action serves no public purpose."  *Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1078 (10th Cir. 1998).

Regarding the first *Farrar* factor, plaintiff did not specify an amount for recovery in his complaint or civil cover sheet.  In the amended complaint, plaintiff seeks "[c]ompensatory and consequential damages, including damages for emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial," "[a]ll economic losses on all claims allowed by law," and punitive damages.  Docket No. 37 at 32.  However, plaintiff submits evidence that, on October 22, 2025, he made a settlement offer of $35,000.  Docket No. 138-3 at 5.  Plaintiff's settlement offer evinces a reasonable approximation of the recovery sought and the value of plaintiff's claims.  *See Ingram v. Oroudjian,* 647 F.3d 925, 927 (9th Cir. 2011) ("settlement negotiations may be considered by the district court as a factor in determining a fee award"); *Arce v. Louisiana State*, 2019 WL 2359204, at *7 (E.D. La. June 4, 2019), *aff'd sub nom.*, *Shelton v. Louisiana State*, 814 F. App'x 883 (5th Cir. 2020) (unpublished) ("the amount [plaintiff] requested at a settlement conference held only two months before trial reasonably approximates how she valued her case" for purpose of the *Farrar* factors).

While plaintiff only recovered $5,000 of the $35,000 sought, the Tenth Circuit has "rejected the mechanical approach" to reducing an attorney's fee award based on plaintiff's partial success.  *See Flitton v. Primary Residential Mortg., Inc.,* 614 F.3d 1173,

1178 (10th Cir. 2010).  Rather, "the district court must make a qualitative assessment to determine what less-than-perfect results are excellent, justifying full recovery, or to what extent plaintiffs' limited success should effect a reduction in the lodestar."  *Id.* (internal quotations and citation omitted).  "Regardless of the form of relief he actually obtains, a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards."  *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986).  Furthermore, *Riverside* rejected "the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers."  *See id.  Riverside* also noted that "Congress enacted § 1988 specifically to enable plaintiffs to enforce the civil rights laws even where the amount of damages at stake would not otherwise make it feasible for them to do so."  *Id.* at 577.  Here, plaintiff, in addition to damages, obtained a judgment against defendant on claims that defendant violated plaintiff's Fourth and First Amendment rights by arresting plaintiff for his protest activity.  "[T]he damages a plaintiff recovers contributes significantly to the deterrence of civil rights violations in the future."  *Id.* at 575.  The deterrent effect achieved by plaintiff is "particularly evident in the area of individual police misconduct, where injunctive relief generally is unavailable."  *Id.* Furthermore, given the low value of plaintiff's claims, adopting a proportionality approach would not have been sufficient to attract competent counsel.  *See id.* at 579 ("In light of the difficult nature of the issues presented by this lawsuit and the low pecuniary value of the many of the rights respondents sought to vindicate, it is highly unlikely that the prospect of a fee equal to a fraction of the damages respondents might recover would have been sufficient to attract competent counsel.").  Accordingly, the

6

Court finds that plaintiff's recovery of $5,000 out of $35,000 does not preclude the recovery of attorney's fees or justify a reduction.[2]

The inquiry into the significance of the legal issue "goes beyond the actual relief awarded to examine the extent to which the plaintiffs succeeded on their theory of liability." *Zinna v. Congrove*, 680 F.3d 1236, 1240 (10th Cir. 2012) (citation omitted). It is true that defendant stated the Offer of Judgment "is not to be construed as an admission of liability on the part of Defendant, nor is it to be construed as an admission that Plaintiff has suffered any damages." Docket No. 135-1 at 1. While the absence of such a disclaimer could have strengthened plaintiff's argument, it is not determinative as to plaintiff's entitlement to attorney's fees. Plaintiff ultimately obtained a Rule 68 judgment against defendant on claims that arise out of the vindication of plaintiff's constitutional right to protest without being subject to arrest. *See Lasswell v. City of Johnston City,* 436 F. Supp. 2d 974, 979 (S.D. Ill. 2006) ("Without surrounding facts to support it," a statement disclaiming liability "is not persuasive" in showing that a party is

---

[2] To the extent that defendant argues that an attorney's fee award is not warranted or should be reduced due to plaintiff's lack of success on all claims, the Tenth Circuit has "refused to permit the reduction of an attorneys fee request if successful and unsuccessful claims are based on a 'common core of facts.'" *Jane L. v. Bangerter*, 61 F.3d 1505, 1512 (10th Cir. 1995) (citation omitted). Here, plaintiff's claims arose out of a common core of facts: his arrests for protest activity on June 2 and 4, 2019 at Union Station in Denver, Colorado. *See* Docket No. 37 at 18-32. Plaintiff obtained judgment against defendant on his remaining First Amendment and Fourth Amendment claims arising out of his arrest on June 4, 2019. Moreover, plaintiff does not seek attorney's fees for tasks related to the June 2 claims and claims asserted only against former defendant RTD and by former plaintiff Kyle Shockley. *See* Docket No. 138 at 12. Given plaintiff's success on his June 4, 2019 claims against defendant, over the course of this nearly five year litigation, the Court finds that further reduction is not warranted. *See Hernandez v. Grisham*, 494 F. Supp. 3d 1044, 1118 (D.N.M. 2020) ("when a plaintiff brings related claims, failure on some claims should not preclude full recovery if the plaintiff achieves success on a significant, interrelated claim").

not entitled to attorney's fees under § 1988).  Accordingly, this factor weighs in favor of plaintiff.

Turning to the public purpose of the litigation, the Court "considers whether the plaintiff's claim accomplished some public goal." *Zinna*, 680 F.3d at 1240 (internal quotation and citation omitted).  "This factor acknowledges § 1988's purpose of ensuring the vindication of important rights, even when large sums of money are not at stake." *Id.* at 1240-41 (internal quotation and citation omitted).  "Where the plaintiff's victory encourages attorneys to represent civil rights litigants, affirms an important right, puts the defendant on notice that it needs to improve, and/or provokes a change in the defendant's conduct," this factor weighs in favor of finding that plaintiff is entitled to an attorney's fee award.  *Lippoldt v. Cole*, 468 F.3d 1204, 1224 (10th Cir. 2006) (internal quotations and citation omitted).  The Court finds that plaintiff obtaining judgment in a case where plaintiff alleged that defendant arrested plaintiff without probable cause and based upon plaintiff's exercise of First Amendment right to protest encourages attorneys to represent others seeking to vindicate their civil rights, affirms the importance of these constitutional rights, and puts defendant on notice of the need to respect such rights. Accordingly, this factor weighs in favor of plaintiff.

In sum, considering the *Farrar* factors, the Court finds that this not a situation that warrants deviating from "[t]he general rule under § 1988 . . . that the prevailing party should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *See Phelps*, 120 F.3d at 1131 (internal quotation and citation omitted).  Because "civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful

8

opportunity to vindicate the important Congressional policies which these laws contain," the Tenth Circuit "has recognized that the district court's discretion to deny fees to a prevailing party is quite narrow." *See id.* (internal quotation and citations omitted). Plaintiff will be permitted to seek an attorney's fee and costs award.

### B. The Reasonableness of Plaintiff's Fee Request

If a party is entitled to attorney's fees, the party must show the reasonableness of its fee request. To determine a reasonable fee request, a court must begin by calculating the "lodestar amount." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). The lodestar amount is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. A party seeking an award of attorney's fees must establish the reasonableness of each dollar and each hour for which the party seeks an award. *Jane L.*, 61 F.3d at 1510.

Plaintiff is requesting $116,616.50 in attorney's fees. Docket No. 138 at 3-4. The requested fee consists of 199.2 hours by attorney E. Milo Schwab at a rate of $505 per hour, 21 hours by attorney Casey Alexa Peel at a rate of $375 per hour, and 46.5 hours by paralegal Nicholas List at a rate of $175 per hour. *Id.* Plaintiff represents that Mr. Schwab's billing entries that were related to parties other than plaintiff and defendant were removed and that Mr. Schwab "reduced [his] remaining time by 29% in an effort to ensure both that no hours were requested related to claims for the June 2, 2022 incident and that the requested hours were well below the actual number of hours worked." *Id.* at 4.

9

### 1. Hourly Rate

A "reasonable rate" is defined as the prevailing market rate in the relevant community for an attorney of similar experience. *Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002); *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996). The party requesting fees bears "the burden of showing that the requested rates are in line with those prevailing in the community." *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998). "Unless the subject of the litigation is 'so unusual or requires such special skills' that only an out-of-state attorney possesses, 'the fee rates of the local area should be applied even when the lawyers seeking fees are from another area.'" *Lippoldt*, 468 F.3d at 1225 (quoting *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983), *overruled on other grounds by Pa. v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 721 n.4 (1987)). In order to satisfy his burden, plaintiff must produce "satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience[,] and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

Plaintiff requests an hourly rate of $505 per hour for Mr. Schwab, an hourly rate of $375 per hour for Ms. Peel, and an hourly rate of $175 per hour for Mr. List. Docket No. 138 at 3-4. Mr. Schwab opened the law firm representing plaintiff in this case, Ascend Counsel, LLC, in 2019 and is lead counsel. *See* Docket No. 138 at 12; Docket No. 138-2 at 2, ¶ 5. Mr. Schwab was also "the only attorney at Ascend Counsel for the bulk of this case." Docket No. 138 at 12. Ms. Peel is an associate at Ascend Counsel, LLC. Docket No. 138-2 at 3, ¶ 12. Mr. List is a paralegal. Docket No. 138 at 4.

10

Defendant argues that plaintiff counsel's hourly rates are not reasonable.  Docket No. 139 at 6.  Defendant contends that Mr. Schwab and Ms. Peel do not have sufficient years of experience to justify their hourly rates.  *Id.* at 6-7.  Regarding Mr. List, defendant argues that plaintiff "cites no basis" for the requested hourly rate and that "the time expended by Plaintiff's paralegal should not be compensated as legal fees," particularly considering the "nominal settlement."  *Id.* at 7.

The Court finds that the hourly rates for Mr. Schwab, Ms. Peel, and Mr. List are reasonable given the prevailing market rates.  Mr. Schwab has been practicing for twelve years and has a "significant civil rights practice."  *See* Docket No. 138 at 5; Docket No. 138-2 at 1, 2, ¶¶ 3, 5.  Ms. Peel has four years of prior experience, which includes a clerkship in the Denver District Court, experience as a Deputy District Attorney, and experience in complex commercial litigation at a boutique Denver law firm.  Docket No. 138 at 5; Docket No. 138-2 at 4, ¶¶ 15-18.  The average Colorado hourly rate for a partner is approximately $542 as calculated by the National Law Journal.  *See Lieberenz v. Bd. of Cnty. Comm'rs of Cnty. of Saguache, Colo.*, No. 21-cv-00628-NYW-NRN, 2026 WL 884937, at *11 (D. Colo. Mar. 31, 2026).  For an associate, the average hourly rate in Colorado is between $347 and $384 according the National Law Journal.  *See id.* at *12.  Other courts in this district have approved similar rates for attorneys in § 1983 cases.  *See*, *e.g., id.* at *10-12; *Valdez v. Motyka*, No. 15-cv-0109-WJM-STV, 2022 WL 1092182, at *3 (D. Colo. Apr. 12, 2022), *rev'd on other grounds*, *Valdez v. Macdonald,* 66 F.4th 796 (10th Cir. 2023) (approving "hourly rates ranging from $575 to $595 per hour for work performed by shareholders and special counsel, $375 per hour for work performed by associates, $100 per hour for work

11

performed by law clerks, $100 to $200 per hour for work performed by paralegals").

Regarding Mr. List, the Court finds that the proposed hourly rate is "well within the

reasonable rates as set by courts in this District" for paraprofessionals.  *See Lieberenz*,

2026 WL 884937, at *12 (approving hourly rate ranging from $100 to $200 for

paraprofessionals) (collecting cases).

### 2.  Number of Hours

In determining the reasonableness of the hours expended, a court considers

several factors.  First, it considers whether the fees pertain to tasks that would ordinarily

be billed to a client.  *See Ramos*, 713 F.2d at 554.  The party seeking fees must

demonstrate that its counsel used "billing judgment" in winnowing down the hours

actually spent to those reasonably expended.  *Praseuth v. Rubbermaid, Inc*., 406 F.3d

1245, 1257 (10th Cir. 2005).  If not, a court should take extra care to ensure that an

attorney has not included unjustified charges in his billing statement.  *Id*.  A court should

also consider whether the amount of time spent on a particular task appears reasonable

in light of (1) the complexity of the case; (2) the number of reasonable strategies

pursued; (3) the responses necessitated by the maneuvering of the other side; and (4)

"the potential duplication of services" caused by the presence of multiple attorneys

when one would suffice.  *Ramos*, 713 F.2d at 554.  Ultimately, the court's goal is to fix a

fee that would be equivalent to what the attorney would reasonably bill for those same

services in an open market.  *Id*. at 555.  Fees will be denied for excessive, redundant,

and otherwise unnecessary expenses.  *Id*. at 553.  The burden is on the party

requesting fees to prove that its counsel exercised proper billing judgment.  *Case v.

Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998)

("Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks.").

Plaintiff seeks to recover for 199.2 hours for Mr. Schwab. *See* Docket No. 138 at 13. Plaintiff states that these hours were calculated after removing entries related to Mr. Shockley, RTD, and claims arising out of June 2, 2019. *See* Docket No. 138 at 12. Plaintiff also "further reduced the hours incurred by Mr. Schwab over the course of the case given the overlapping nature of Mr. Irizarry's and Mr. Shockley's claim and Mr. Irizarry's claim for both June 2 and June 4." *Id.*

Defendant argues that the requested hours are "excessive in light of work done relative to the claims on which he obtained any degree of success." Docket No. 139 at 7-8. Specifically, defendant takes issue with the hours counsel spent in connection to defendant's motion to dismiss the amended complaint, defendant's motion for summary judgment, and the vagueness of the billing records. *See id.* at 8. Defendant also argues that there are issues with the billing records for trial preparation as it relates to Ms. Peel and Mr. List. *See id.* at 8-9.

Plaintiff states that of the hours included in the billing records, *see* Docket No. 138-1, 61.3 hours were spent preparing plaintiff's response to defendant's motion to dismiss the amended complaint. *See* Docket No. 138 at 13. The Court finds these hours to be excessive in light of the fact that Mr. Schwab had already billed time in connection to defendant's motion to dismiss the original complaint. Docket No. 33. In response to defendant's motion to dismiss the original complaint, plaintiff filed a motion

13

for leave to amend the complaint.  The billing records demonstrate that, in preparing to do so, Mr. Schwab billed hours for tasks that should have reduced the time needed to oppose defendant's motion to dismiss the amended complaint.  For instance, Mr. Schwab reviewed case law relevant to Fourth Amendment qualified immunity, First Amendment retaliation, and the impact of *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).  *See* Docket No. 138-1 at 3-4.  Furthermore, Mr. Schwab engaged in unspecified "additional case law research."  *See id.* at 4.  This research was not only relevant to plaintiff's motion for leave to amend, but also to plaintiff's opposition to defendant's motion to dismiss the amended complaint.  Yet, Mr. Schwab still spent approximately 60 hours opposing defendant's motion to dismiss.  *See id.* at 5-7.  The Court acknowledges that Mr. Schwab appeared to conduct some research that was distinct from the research performed in preparation for him seeking leave to amend, for instance, on issues related to extrinsic evidence, First Amendment protected speech, and trespass.  *See id.* at 5-6.  Nevertheless – in light of the overlap between plaintiff's counsel's preparation in filing the motion for leave to amend and opposing defendant's motion to dismiss the amended complaint – the Court finds that reducing the reasonable hours spent by 10 hours to be appropriate to account for these redundancies.  *See Kirkland v. Atl. Marine, Inc,* 2005 WL 5928900, at *3 (M.D. Fla. Sept. 2, 2005) (finding hours spent responding to defendant's motion "excessive" where "issues argued in Defendants' motion are basically the same arguments Defendants made in prior filings"); *Fabela v. City of Farmers Branch, Tex.*, 2013 WL 2655071, at *8 (N.D. Tex. June 13, 2013) (finding "no more than 50 hours were reasonably expended by [plaintiff's counsel] researching and drafting the response" to the motion to dismiss in Voting

14

Rights Act case).  The Court finds that further reduction is not necessary, especially where defendant has failed to identify any specific tasks that were billed unreasonably. *See Nat'l Collegiate Athletic Ass'n v. Kizzang LLC*, 2018 WL 2266469, at *5 (S.D. Ind. May 17, 2018) ("The Court finds that Defendants have not met their burden of demonstrating that the fifty hours spent planning, researching, and drafting a response to the Motion to Dismiss was unreasonable—simply saying that fifty hours was too much does not make it so.").

Defendant does not identify any hours that were unreasonably spent by plaintiff's counsel.  Moreover, the Court does not find Mr. Schwab's hours related to defendant's motion for summary judgment to be unreasonable.  Mr. Schwab spent approximately 56 hours responding to defendant's motion for summary judgment, *see* Docket No. 138 at 13, wherein defendant moved for summary judgment on all of plaintiff's remaining claims and implicated issues of qualified immunity, Fourth Amendment, and First Amendment law.  *See generally* Docket No. 92.  Furthermore, to respond to the motion, plaintiff's counsel had to review the extensive record in this case, which included evidence from plaintiff's related state court proceedings, body-worn camera footage, security footage, and deposition testimony.  Again, defendant does not explain why the hours attributable to these tasks are unreasonable.

The Court rejects defendant's arguments regarding the unreasonableness of hours spent on trial preparation.  Defendant argues that "[i]t is impossible to tell from the submitted bills which of the entries relate to this work by Mr. List, let alone specifically trial preparation."  Docket No. 139 at 8.  Yet, it is clear that Mr. List billed for trial preparation work on December 1, 2, 3, and 4, 2025.  *See* Docket No. 138-1 at 13-14.

15

Mr. List billed at $175 per hour and performed trial preparation work that included preparing the exhibit and witness lists, working on the motions in limine, and reviewing evidence. *See id.* at 13. On average, over these four days, Mr. List billed 7.25 hours preparing for the then-upcoming trial, which the Court finds to be reasonable. *See id.* Similarly, Ms. Peel in preparation for trial, reviewed evidence, prepared proposed jury instructions, and worked on motions in limine. *See id.* at 12-14. Ms. Peel billed approximately 15 hours in connection to trial preparation. *See id.*

Without citing any support, defendant contends that, because this matter did not proceed to trial, the Court should reduce the hours billed for trial preparation. *See* Docket No. 139 at 9. Plaintiff filed notice of acceptance of the Offer of Judgment on December 16, 2025, which was approximately three weeks before trial. *See* Docket Nos. 114, 135. Furthermore, defendant did not send the Offer of Judgment until December 4, 2025, *see* Docket No. Docket No. 135-1 at 1, and plaintiff's counsel does not seek to recover for any hours after this date. *See* Docket No. 138 at 15 n.2; Docket No. 138-1 at 14. Given that settlement was achieved close to trial, the Court finds that it is reasonable for plaintiff to recover for hours spent on trial preparation. *See Santiago v. Peacock's 17, LLC,* 2024 WL 582880, at *6 (S.D. Fla. Jan. 29, 2024), *report and recommendation approved*, 2024 WL 580358 (S.D. Fla. Feb. 13, 2024) ("It is reasonable for Plaintiff to recover fees related to trial preparation when the case settled close to the trial date.").[3]

---

[3] Defendant challenges as vague nearly "30 hours of 'miscellaneous' attorney" that defendant believes to be attributable to "correspondence with Plaintiff, review of various orders, and drafting of pleadings like the motion to continue trial." Docket No. 139 at 8. Defendant does not identify the billing entries he is objecting to and the Court does not find the tasks listed by plaintiff to be unreasonable or vague.

16

Accordingly, the Court finds 51.3 hours to be reasonable for preparing a response to defendant's motion to dismiss the amened complaint, which is a result of reducing the time proposed by plaintiff by 10 hours for Mr. Schwab to account for excessive billing.  *See* Docket No. 138 at 13.  Applying the additional reduction to Mr. Schwab's hours results in an award of 30.78 for time spent opposing the motion to dismiss.  *See* Docket No. 138 at 13.  Thus, Court will award a total of 192.38 hours to Mr. Schwab.  Because the Court finds that Ms. Peel's and Mr. List's hours are reasonable, the Court will award 21 hours for Ms. Peel and 46.5 hours for Mr. List.

### 3.  *Lodestar Amount*

The Court finds that, after reducing Mr. Schwab's hours to account for the excessive billing in connection to the motion to dismiss, applying the reductions proposed by plaintiff, *see* Docket No. 138 at 13, which the Court finds reasonable, and applying the hourly rates of Mr. Schwab, the lodestar amount is $97,546.90 for Mr. Schwab.  Docket No. 138 at 13.  The lodestar amount for Ms. Peel is $7,875 and for Mr. List is $8,137.50.  Thus, the total lodestar amount is $113,559.40.

### C. Costs

Plaintiff requests $1,251.20 in costs, consisting of the $402 complaint filing fee and $849.20 for the cost of obtaining plaintiff's deposition transcript.  Docket No. 138 at 15.  The Court finds that these costs are reasonable.

## III.    CONCLUSION

Therefore, it is

**ORDERED** that Plaintiff's Motion for Attorney's Fees and Costs [Docket No. 138] is **GRANTED in part**.  It is further

**ORDERED** that defendant Lee Ingersoll shall pay plaintiff Abade Irizarry

attorney's fees in the amount of **$113,559.40** and costs in the amount of **$1,251.20**.


DATED August 13, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge